IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Snyder Brothers, Inc.,              :
            Petitioner             :
                                   :    No.  1043 C.D. 2015
        v.                         :
                                   :    Argued:  October 4, 2019
Pennsylvania Public Utility        :
Commission,                        :
            Respondent             :


BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge


*OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                          FILED:  February 6, 2020


            This matter comes to us on remand from the Supreme Court in *Snyder Brothers, Inc. v. Pennsylvania Public Utility Commission*, 198 A.3d 1056 (Pa. 2018), *order amended on reconsideration*, 203 A.3d 964 (Pa. 2019) (*Snyder II*), which reversed the decision of this Court in *Snyder Brothers, Inc. v. Pennsylvania Public Utility Commission*, 157 A.3d 1018 (Pa. Cmwlth. 2017) (en banc) (*Snyder I*).

            By way of background, on January 17, 2014, the Bureau of Investigation and Enforcement (I&E)[1] filed a complaint, alleging that Snyder Brothers, Inc. (SBI)

---

[1] Our Supreme Court has explained:  "As the [Public Utility Commission (PUC)] is statutorily structured, its investigative and enforcement bureau and its adjudicative division perform separate functions:  I&E is tasked with conducting investigations into alleged violations of laws within its jurisdictional purview, and whenever it determines that a violation has occurred, it files a
**(Footnote continued on next page…)**

did not properly identify and pay impact fees on 24 wells in 2011 and 21 wells in 2012. After reviewing SBI's annual well production reports for calendar years 2011 and 2012, I&E determined that SBI failed to report these 45 wells as "vertical wells," which are subject to an impact fee under the Pennsylvania Oil and Gas Act, a statute commonly known as Act 13.[2] In its complaint, I&E sought $507,586.00 in past due impact and administrative fees, plus penalties and interest, and also requested that SBI be ordered to pay an additional penalty of $50,000.00. SBI filed an answer and new matter, asserting that the wells at issue were "stripper wells," not "vertical wells," and were thus exempt from the impact fee.[3] In his decision, the ALJ

---

**(continued…)**

formal complaint which is heard by an [Administrative Law Judge (ALJ)] from the PUC's adjudicative division. If the ALJ finds that a violation has occurred, he or she then determines an appropriate penalty. A party aggrieved by the ALJ's decision may appeal it to the PUC Commissioners [the Commission], who then collectively sit as an administrative tribunal to decide such challenges." *Snyder II*, 198 A.3d at 1062 n.8.

[2] Act of February 14, 2012, P.L. 87, 58 Pa.C.S. §§2301-3504.

[3] As an aside that bears some relevance to this appeal, Section 2301 of Act 13, titled "Definitions," defines these two types of wells as follows:

> "Stripper well" – An unconventional gas well incapable of producing more than 90,000 cubic feet [cf] of gas per day during **any** calendar month, including production from all zones and multilateral well bores at a single well, without regard to whether the production is separately metered.

*     *     *

> "Vertical gas well" – An unconventional gas well which utilizes hydraulic fracture treatment through a single vertical well bore and produces natural gas in quantities greater than that of a stripper well.

**(Footnote continued on next page…)**

2

determined that the definition of "stripper well" was ambiguous but, applying the statutory construction factors for ascertaining legislative intent, concluded that SBI was operating "vertical wells" and therefore violated Act 13. Besides ordering SBI to pay past due impact fees, the ALJ also awarded: (1) interest under section 2308(a) of Act 13, 58 Pa.C.S. §2308(a),[4] and accepted I&E's proposed 3% interest rate as reasonable; (2) a seemingly mandatory penalty under section 2308(b) of Act 13, 58

---

**(continued…)**

58 Pa.C.S. §2301 (emphasis added). The decisive legal issue presented in *Snyder I* and *Snyder II* focused on the interpretative meaning of the word "any." As observed by a Justice in our Supreme Court, this "short yet elusive term" often creates "maddening complexities." *Snyder II*, 198 A.3d at 1080 (Wecht, J., concurring, joined by Baer, J.).

In *Snyder I*, a majority of this Court concluded

> that the word 'any' in the term 'stripper well' unambiguously means 'any' or 'one' and not 'all' or 'every.' Because the uncontroverted evidence establishes that the wells at issue have produced **less than 90,000 cf of gas in at least one month**, they are 'stripper wells' and SBI does not have to pay impact fees for these wells. Alternatively, assuming, *arguendo,* that 'any' is an ambiguous term, this Court concludes that an analysis of the statutory construction factors do not resolve the ambiguity and that the ambiguity must be construed in favor of SBI.

157 A.3d at 1030-31 (emphasis added). In contrast, in *Snyder II*, our Supreme Court concluded that, while "any" was an ambiguous term, "under Act 13, an unconventional vertical well is a 'vertical gas well' subject to assessment of an impact fee for a calendar year whenever that well's natural gas production **exceeds 90,000 cubic feet per day in at least one calendar month** of that year." *Snyder II*, 198 A.3d at 1079 (emphasis added).

[4] "The [C]ommission shall assess interest on any delinquent fee at the rate determined under section 2307(a) (relating to commission)." 58 Pa.C.S. §2308(a). Pursuant to section 2307(a) of Act 13, the "[C]ommission shall have the authority to make all inquiries and determinations necessary to calculate and collect the fee, administrative charges or assessments imposed under this chapter, including, if applicable, interest and penalties." 58 Pa.C.S. §2307(a).

3

Pa.C.S. §2308(b),[5] at the 25% maximum rate; and (3) a discretionary civil penalty in the amount of $50,000.00 under section 2310(a) of Act 13, 58 Pa.C.S. §2310(a).[6]

In a decision dated June 11, 2015, the Commission upheld the ALJ's determination that SBI operated 45 "vertical wells." The Commission concluded that the ALJ did not err in finding that SBI violated Act 13 by not paying impact fees on these wells and that the imposition of interest and penalties was mandatory pursuant to section 2308(a) and (b) of Act 13. However, the Commission agreed with SBI that a discretionary civil penalty was not warranted under the facts and circumstances of this case and granted its exceptions related to that issue. (Commission's decision at 43-67.) Ultimately, the Commission "ordered SBI to pay [$390,250.00] in impact and administrative fees for 2011 and 2012, as well as $11,707.50 in interest and $97,562.50 in penalties for those years—a cumulative total of $499,520[.00]" *Snyder II*, 198 A.3d at 1063. The Commission further ordered that, within 20 days of its decision, SBI "shall remit $499,520[.00] payable by certified check or money order to 'Commonwealth of Pennsylvania' and sent to [the PUC]." (Commission's decision at 69-70.)

SBI then appealed to this Court, arguing that a plain language analysis and/or proper application of statutory construction factors leads to the conclusion that

---

[5] "In addition to the assessed interest under subsection (a), if a producer fails to make timely payment of the fee, there shall be added to the amount of the fee due a penalty of 5% of the amount of the fee if failure to file a timely payment is for not more than one month, with an additional 5% penalty for each additional month, or fraction of a month, during which the failure continues, not to exceed 25% in the aggregate." 58 Pa.C.S. §2308(b).

[6] "In addition to any other proceeding authorized by law, the [C]ommission may assess a civil penalty not to exceed $2,500 per violation upon a producer for the violation of this chapter. In determining the amount of the penalty, the [C]ommission shall consider the willfulness of the violation and other relevant factors." 58 Pa.C.S. §2310(a).

4

it was operating "stripper wells."  In *Snyder I*, a majority of this Court agreed with SBI and reversed "the Commission's conclusion that SBI violated Act 13 and owed impact fees for improperly listed stripper wells.  With there being no violation of Act 13, we also reversed the Commission's imposition of interest and penalties on SBI." *Snyder I*, 157 A.3d at 1031.  *See supra* note 2.

On further appeal in *Snyder II*, our Supreme Court, in an opinion and order dated December 28, 2018, reversed this Court and reinstated the Commission's order.  In so deciding, the Supreme Court concluded that, although the term "stripper well" was facially ambiguous, its resort to the statutory construction factors supported the conclusion that SBI was, in fact, operating "vertical wells" and was mandated under Act 13 to pay impact fees for those wells.  *See supra* note 2.  Therefore, the Supreme Court reversed this Court's order "set[ting] aside the [Commission's] assessment to SBI of impact fees for the 2011 and 2012 reporting years" and relinquished jurisdiction.  *Snyder II*, 198 A.3d at 1079.

Thereafter, SBI filed a motion for reconsideration, which our Supreme Court granted on March 7, 2019.  In so doing, the Supreme Court amended its opinion and order in *Snyder II* "such that this matter is REMANDED to the Commonwealth Court to address [SBI's] outstanding appellate issues before that court."  *Snyder Brothers, Inc. v. Pennsylvania Public Utility Commission*, 203 A.3d 964, 964 (Pa. 2019) (emphasis in original).

## Discussion

On remand to this Court, the outstanding issues advanced by SBI concern the propriety of the Commission's imposition of interest and a penalty under section 2308 of Act 13, 58 Pa.C.S. §2308.  In general, SBI contends that (1) the

statutory procedure and provisions authorizing the imposition of interest and a penalty violate procedural due process; and (2) the representations and conduct of the Commission, as well as the directives as stated in Commission's October 17, 2013 *Proposed Rulemaking Order*, deprived it of fair notice that interest and a penalty would be assessed. Finding merit in these two arguments, we reverse the Commission on separate and independent grounds.[7]

With respect to the present issues that SBI raises before this Court, the Commission set forth the following pertinent findings of fact in its June 11, 2015 decision:

> On August 15, 2012, SBI submitted to the Commission an Annual Report for the year 2011 as required by Act 13. The 2011 Annual Report listed each well operated by SBI that was potentially subject to the administrative and impact fees imposed by Act 13. **SBI's annual report accurately set forth the total gas produced by each well in each month of the 2011 reporting period**.
>
> On August 29, 2012, SBI received a **2011 Impact Fee Statement** from the Commission stating that SBI owed impact fees in the amount of $170,000[.00] for the period January 1, 2011, through December 31, 2011, based upon production from seventeen vertical gas wells. Additionally, on August 29, 2012, SBI received a 2011 Spud Fee Statement from the Commission stating that it owed administrative fees in the amount of $850[.00] for [17] wells. **On August 30, 2012, SBI paid the Commission the amounts stated on the 2011 Impact Fee and Spud Fee Statements**.

[7] In addition to forwarding procedural due process claims, SBI also asserts that the procedure in Act 13 to impose and collect interest and a penalty violates the doctrine of unconstitutional conditions and that the Commission is barred by the doctrine of accord and satisfaction from collecting interest and a penalty. Relying on due process grounds to support our disposition, we decline to address these issues and any other issue that SBI raises (or could arguably be deemed to have raised) in its appellate brief.

On March 27, 2013, SBI submitted to the Commission an annual report for the year 2012. The 2012 annual report listed each well operated by SBI that was potentially subject to the spud and impact fees imposed by Act 13 for the 2012 reporting period. In its 2012 annual report, which accurately set forth the production for each well for the 2012 reporting period, SBI stated that it operated [28] vertical gas wells for which spud and impact fees were due.

In an e-mail dated April 12, 2013, an employee of the Commission's Bureau of Administration stated that a vertical well is not a stripper well, as defined in Section 2301 of Act 13, if it has reported production in excess of 90,000 cf in any one month of a reporting period. **In response, SBI advised the Commission that it disagreed with the Commission's interpretation and stated that each well listed as a stripper well in the 2011 and 2012 annual reports qualified as stripper wells by virtue of the reported monthly production histories for each year**.

On April 8, 2013, SBI received the **2012 Impact Fee Statement** from the Commission stating that SBI owed impact fees in the amount of $236,000[.00] for 2012. In addition, SBI received a Spud Fee Statement for 2012 in the amount of $1,400[.00].

(Commission's decision at 6-8) (internal citations and footnotes omitted).

The Commission continued to explain that

[t]he 2012 Impact Fee Statement provided that the impact fee for forty-nine vertical gas wells was $409,000.[00]. However, **the Commission subtracted the impact fees for [21] disputed vertical gas wells** in the amount of $173,000.[00]. Thus, the 2012 Impact Fee Statement listed the amount owed as $236,000 based on [28] vertical wells . . . .

*Id.* at 8 n.8.

After confirming that "**SBI paid the impact and spud fees identified in the 2012 statements**," *id.* at 8, the Commission then stated:

7

On October 17, 2013, the Commission issued its *Proposed Rulemaking Order*.[8] In pertinent part, the order states that "**[i]f a producer is disputing whether a particular well is subject to the impact fee, the producer should not pay the corresponding impact fee for the disputed well unless and until the dispute has been resolved**." [*Proposed Rulemaking Order*] at 16-17. The order further states that, in the event that there is a dispute, and "**[f]ollowing the adjudicatory proceeding before the [ALJ], the Commission will issue a [f]inal [o]rder regarding the matter**" and "**may assess interest and penalties on untimely or delinquent impact fee payments . . . if . . . the Commission sustains the amount due by [the] final order**." [*Proposed Rulemaking Order*] at 17-18.

During the hearing [before the ALJ], I&E presented the testimony of a Commission witness who explained that after receiving SBI's 2012 annual report on March 27, 2013, the witness realized that SBI and the Commission interpreted the term "vertical well" differently. The witness later calculated that SBI owed a total of $241,200[.00] in impact and spud fees for 2011 based upon production from an additional [24] wells. For 2012, the witness calculated that SBI owed a total of $149,050[.00] in impact and spud fees for 2012 based upon production from an additional [21] wells and the information was conveyed to SBI.

(Commission's decision at 8-9) (internal footnotes omitted).

Notably, in its decision, the Commission observed:

**There is no mechanism in Act 13 whereby SBI could have paid under protest the amount of any impact or spud fees that it disputed**. Similarly, Act 13 contains no mechanism by which the Commission could refund any

---

8 This order is available at:

http://www.puc.state.pa.us/about_puc/consolidated_case_view.aspx?Docket=M-2012-2288561 (last visited January 13, 2020).

**impact or spud fees that were paid and disbursed to a
municipality, but thereafter determined not to be due
and owing or otherwise to have been erroneously paid**.

(Commission's decision at 9) (emphasis added).[9]

Having reviewed the background, procedural history, and facts of this case, we now address the issues that SBI raises on remand from the Supreme Court in *Snyder II*.

### Procedural Due Process—Act 13 Lacks a Meaningful Post-Deprivation Remedy and Authorizes the Assessment of an Unconstitutional Penalty

SBI argues that the statutory procedure used to calculate, impose, and collect impact fees violates procedural due process. SBI contends that because impact fees assessed under Act 13 "cannot be refunded if paid in error or if a subsequent determination is made that the fees were not due or owing for some other reason," (SBI's br. at 13 n.6), the statute lacks a meaningful hearing and/or opportunity to adequately protect its property interests against unreasonable deprivation. In a similar vein, SBI asserts that because Act 13 lacks a refunding mechanism, it is placed in an untenable position. Specifically, SBI posits that it must either pay the impact fees and, if it is successful in challenging the payment in an appeal, be deprived of a refund; or, on the other hand, SBI must withhold the impact fee payment and, if its challenge is unsuccessful, be subjected to a mandatory imposition of interest and a penalty. According to SBI, this procedure is

_____

[9] In section 2314(a) of Act 13, our General Assembly "established a fund in the State Treasury to be known as the Unconventional Gas Well Fund to be administered by the [C]ommission." 58 Pa.C.S. §2314(a). Under section 2314(b), "[a]ll fees imposed and collected under this chapter shall be deposited into the fund and are hereby appropriated for the purpose set forth in this section." 58 Pa.C.S. §2314(b). In addition to state governmental agencies, "counties and municipalities" are recipients of monies deposited into the fund. Section 2314(d) of Act 13, 58 Pa.C.S. §2314(d).

unconstitutional under the Due Process Clause[10] and, also, punishes or burdens the exercise of its legal right to contest and defend itself from adverse administrative action in enforcement proceedings.

The Fourteenth Amendment to the United States Constitution provides, in relevant part, that no "State [shall] deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, §1. To maintain a due process challenge, a party must initially establish the deprivation of a protected property or liberty interest. *Miller v. Workers' Compensation Appeal Board (Pavex, Inc.)*, 918 A.2d 809, 812 (Pa. Cmwlth. 2007).

Here, when I&E filed a complaint seeking payment from SBI for past due impact fees and, in addition, interest and a penalty for failing to pay those fees, it pursued action that is tantamount to an administrative monetary assessment. By all accounts, an assessment of this nature is considered by the courts to be a deprivation of property for purposes of the Due Process Clause. *See Gallo Cattle Co. v. United States Department of Agriculture*, 159 F.3d 1194, 1199 (9th Cir. 1998) (concluding that where the National Dairy Promotion and Research Board, acting pursuant to the Dairy and Tobacco Adjustment Act of 1983,[11] issued a monetary assessment to a milk producer based on the quantity of milk production, the assessment, in and of itself, was "without question a deprivation of property").[12] The issue, then, is not

---

[10] U.S. Const. amend. XIV, §1.

[11] Pub. L. No. 98-180, 97 Stat. 1128, *as amended*, 7 U.S.C. §§4501-38.

[12] *See also McKesson Corp. v. Florida Division of Alcoholic Beverages and Tobacco*, 496 U.S. 18, 36 (1990) ("Because exaction of a tax constitutes a deprivation of property, the State must provide procedural safeguards against unlawful exactions in order to satisfy the commands of the Due Process Clause."); *Z&R Cab, LLC v. Philadelphia Parking Authority*, 187 A.3d 1025, 1037 (Pa. Cmwlth. 2018) (applying *McKesson Corp.* in a case where licensed taxicab companies sought **(Footnote continued on next page…)**

10

whether SBI is entitled to due process but, as it is often put, "what process is due." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).

At its core, procedural due process requires that the State provide a person with a "meaningful opportunity to be heard" when depriving that person of a constitutionally protected interest. *LaChance v. Erickson*, 522 U.S. 262, 266 (1998); *see also Fuentes v. Shevin*, 407 U.S. 67, 80 (1972). An opportunity to be heard is "meaningful," even if it is not available until after the deprivation has occurred, so long as the person is afforded with (1) "a fair opportunity to challenge the accuracy and legal validity of the [deprivation]" and (2) a "clear and certain remedy." *McKesson Corp. v. Florida Division of Alcoholic Beverages and Tobacco*, 496 U.S. 18, 39 (1990). As such, in the post-deprivation stage of an administrative proceeding, "the Due Process Clause requires that [SBI] have, in addition to a fair opportunity to challenge the [impact fee] assessments, a clear and certain remedy for a successful challenge." *Gallo*, 159 F.3d at 1199.

Based upon these legal precepts, if Act 13's statutory procedure fails to provide SBI with the opportunity to obtain a "clear and certain remedy" in the event of a successful challenge, specifically a refund for an amount paid pursuant to the Impact Fee Statements, then the procedure does not comport with the dictates of procedural due process. *Cf. Gallo*, 159 F.3d at 1199 (concluding that "the post-

---

**(continued…)**

refunds of all fees and assessments issued by the Philadelphia Parking Authority); *O'Neill v. City of Philadelphia*, 817 F. Supp. 558, 566 (E.D. Pa. 1993), *vacated on other grounds*, 32 F.3d 785 (3d Cir. 1994) ("The property right involved is the right to keep money unless the government takes it through actions that comport with due process. If the state does not have a legitimate claim to a person's money and, nevertheless, under color of state law demands [] payment, its conduct amounts to a constitutional deprivation.").

11

deprivation remedy available to [the milk producer], namely a refund of assessments found not to have been due, is constitutionally sufficient in that it provides a 'clear and certain remedy'"); *see City of Houston v. Harris County Outdoor Advertising Association*, 879 S.W.2d 322, 333-34 (Tex. Civ. App. 1994) (concluding that a violation of procedural due process occurred where the "appellees were required under threat of penalty to timely pay [] a tax" and there was no "post-deprivation procedure available for appellees . . . to obtain 'clear and certain' relief; in this case, refund of the excess tax paid").[13]

Here, an examination of the provisions of Act 13 reveal that the pre-deprivation statutory procedure regarding impact fee payments begins and ends with the date on which the producer submits an annual report. On the same date (April 1 of each year after 2013), the producer is obligated to tender payment for impact fees for wells that the producer identifies in the annual report that meet the requisite level of production, *i.e.*, "vertical wells." *See* section 2303(a)-(b) of Act 13, 58 Pa.C.S. §2303(a)-(b); *see also supra* note 2. With respect to the next stage of the administrative process, the Commission reviews the annual report and confirms whether the producer has made the necessary payments. If the producer has not, the Commission may send notice to the producer and assess interest and a penalty on a

---

[13] *See also McCall v. National Health Corporation*, 100 S.W.3d 209, 213 (Tenn. 2003) (noting that pursuant to the post-deprivation procedure in the state statute, "a trial court can order the employee to reimburse any funds that were improperly paid to the employee" and concluding that "any due process argument fails because an employer does, in fact, have recourse should the court later determine that the claimant did not suffer a compensable injury"); *Texas Boll Weevil Eradication Found., Inc. v. Lewellen*, 952 S.W.2d 454, 457-48 & 466-67 (Tex. 1997) (stating that "due process [] requires states to provide a meaningful post[-]deprivation remedy . . . to a person challenging the validity of a fee or assessment" and concluding that a statute that imposes "regulatory fees" in the form of "assessments" and "imposes penalties for late payment of assessments" raises "a serious question" as to its constitutionality because the statute "does not adequately allow [the petitioners] to challenge the [regulatory] board's assessments").

delinquent or untimely payment and potentially suspend the producer's permit until payment is made. *See* sections 2305, 2307, 2308(a)-(c) of Act 13, 58 Pa.C.S. §§2305, 2307, 2308(a)-(c). Concerning the procedure to be followed post-deprivation, Act 13 states, in general terms, that the

> [C]ommission may issue an order as necessary to enforce this chapter. An order issued under this section shall take effect upon notice, unless the order specifies otherwise. A person aggrieved by an order under this section may appeal to the Commonwealth Court under [section 763 of the Judicial Code,] 42 Pa.C.S. §763 (relating to direct appeals from government agencies).

Section 2309 of Act 13, 58 Pa.C.S. §2309.

Otherwise, the Commission has promulgated regulations that pertain to and detail the procedure for a hearing to challenge any order that the Commission issues in any case that falls within the jurisdiction and enforcement regime of the PUC. *See* 52 Pa. Code §1.1. Namely, the regulations have basic provisions governing pre-hearing pleadings and practice and discovery; rules regarding evidence and witnesses at the hearing; the right to a hearing before a presiding officer, whether it be an ALJ or a member of the Commission; the right to file exceptions, appeal to the Commission, and obtain an adjudication from the Commission; and the process and circumstances for filing a subsequent appeal to this Court. *See* 52 Pa. Code Chapt. 5, §§5.1-5.631.

As evident from the above recitation of the pertinent law, Act 13 and the Commission's promulgated regulations do not contain any statutory section, rule, or procedure that could reasonably be construed to provide the Commission with the authority, and a producer the right to receive, a refund for impact fees payments that are later determined to be unwarranted. Further, I&E entered into a stipulation of facts with SBI confirming that there is no substantive procedure through which SBI

13

could withhold payment or pay under protest during a challenge, or for the Commission to provide SBI with a refund in the event a challenge is successful. (Reproduced Record (R.R.) at 172a.) In its decision, the Commission analyzed Act 13 as a whole and reached the same conclusion. (Commission's decision at 9.) Under the current state of Pennsylvania law, the Commission's interpretation is entitled to at least some form of administrative deference. *See Snyder II*, 198 A.3d at 1079. In any event, the Commission's interpretation is consistent with the regime of Act 13 and correctly recognizes that the statute fails to provide a producer with a meaningful post-deprivation remedy in the form of a refund for impact fee payments that the Commission, or an appellate court in a subsequent appeal, determines were paid erroneously and/or in contravention to the law.

Under the federal constitution, and necessarily the charter of this Commonwealth, the ability of a producer to obtain an actual and complete remedy is indispensable to meet due process concerns. By employing a procedure that deprives SBI of its property without affording SBI the opportunity to meaningfully challenge that deprivation and attain full relief, Act 13 effectuates a violation of SBI's due process rights under the Fourteenth Amendment to the United States Constitution. For these reasons, we conclude that Act 13 lacks adequate, post-deprivation procedural safeguards and that the statute, on its face, amounts to and sanctions an unconstitutional deprivation of property without due process of law.

In apparent recognition that Act 13 is deficient in that it does not contain a clear and certain post-deprivation remedy, the Commission ostensibly attempted to cure the defect when it issued the October 17, 2013 *Proposed Rulemaking Order*. Among other things, the *Proposed Rulemaking Order* stated that when "a producer is disputing whether a particular well is subject to the impact fee, the producer should

14

not pay the corresponding impact fee for the disputed well unless and until the dispute has been resolved." *Id.* at 16-17. However, as the Commission acknowledged in its decision and brief to this Court, the *Proposed Rulemaking Order* has not been officially finalized into a promulgated regulation, also known as a "substantive rule," and it is instead a "general statement of policy." *See* Commission's Br. at 11. Consequently, the *Proposed Rulemaking Order* is not binding on the Commission, does not carry the force of law, and is legally insufficient to rectify the procedural inadequacy of Act 13. *See Cary v. Bureau of Professional and Occupational Affairs (State Board of Medicine)*, 153 A.3d 1205, 1213-15 (Pa. Cmwlth. 2017) (en banc) ("A properly adopted substantive rule establishes a standard of conduct which has the force of law . . . . A general statement of policy, on the other hand, does not establish a 'binding norm.' . . . . The agency cannot apply or rely upon a general statement of policy as law because a general statement of policy only announces what the agency seeks to establish as policy."); *see also Northwestern Youth Services, Inc. v. Department of Public Welfare*, 66 A.3d 301, 310-11 (Pa. 2013). In a somewhat like manner, this Court lacks the authority to issue a legal pronouncement that has the effect of judicially inserting an adequate post-deprivation remedy into Act 13 in order to alleviate the constitutional infirmity. *See Penjuke v. Pennsylvania Board of Probation and Parole*, 203 A.3d 401, 420 (Pa. Cmwlth. 2019) (en banc) ("Under Pennsylvania law, this Court 'may not usurp the province of the legislature by rewriting the [statute] to add hearing [] requirements . . . as that is not our proper role under our constitutionally established tripartite form of governance.'" (quoting *In Re Fortieth Statewide Investigating Grand Jury*, 197 A.3d 712, 721 (Pa. 2018))).

15

Moreover, based on the peculiar facts of this case, SBI submitted accurate annual reports to the Commission, paid in full the amounts requested in the Commission's Impact Fee Statements, and then, and only then, was it subjected to enforcement proceedings. Aside from the fact that SBI pursued its challenge through a statutory structure that violates the commands of due process because Act 13 lacks a clear and certain remedy, I&E filed a complaint seeking the imposition of interest and a penalty for the 2011 and 2012 reporting years as an apparent result of SBI's decision to contest the position advanced by the Bureau of Administration. Curiously, I&E filed the complaint after the Commission issued SBI the Impact Fee Statements for these years, and the Statements did not assert that SBI owed fees for any of the wells that I&E identified in the complaint. Nonetheless, SBI possessed a legal right to challenge the allegations in the complaint under the Commission's promulgated regulations and, also, as a matter of constitutional due process. Once SBI was placed in a defensive posture in the enforcement proceedings, and exercised its right by filing an answer, it was then faced with the threat of having to pay interest and a penalty for wells that were not previously identified by the Commission in the Impact Fee Statements as wells for which SBI owed impact fees.

The decisions of the United States Supreme Court clearly establish that a person has a due process right to challenge the validity of an administrative order affecting his affairs without being forced to pay excessive penalties for simply lodging a challenge or for lodging a challenge that is unsuccessful. *See Oklahoma Operating Co. v. Love*, 252 U.S. 331, 336-37 (1920); *Ex parte Young*, 209 U.S. 123, 147 (1908). In *Ex parte Young*, the issue before the Court was the validity of certain penalty provisions for violating a Minnesota statute that set maximum railroad freight charges. Under the Minnesota statute, a railroad violating the maximum freight

16

provisions was subjected to heavy penalties and its officers and directors faced the possibility of imprisonment. There was no opportunity for the railroad to seek pre-enforcement review of the validity of the statute and the only way the railroad could contest the statute was to flout its provisions and be subjected to its penalties. The penalty provisions were also mandatory in nature and would be imposed even if the railroad asserted a good faith challenge to the validity of the statute.

In holding the statute unconstitutional, the Supreme Court in *Ex parte Young* concluded that the Due Process Clause was contravened because the penalties for disobeying the statute were so severe that they effectively intimidated a party into not seeking judicial review.[14]

---

[14] In *Love*, the United States Supreme Court reaffirmed and reiterated this principle of *Ex parte Young*, stating as follows:

> If the complaint results in a citation to show cause why [the petitioner] should not be punished for contempt, he may justify before the Commission by showing that the order violated was invalid, unjust or unreasonable. If [the petitioner] fails to satisfy the Commission that it erred in this respect, a judicial review is opened to him by way of appeal on the whole record to the Supreme Court. But the penalties, which may possibly be imposed, if he pursues this course without success, are such as might well deter even the boldest and most confident . . . . Obviously a judicial review beset by such deterrents does not satisfy the constitutional requirements[.]

252 U.S. at 336-37. *See Fidelity-Philadelphia Trust Co. v. Hines*, 10 A.2d 553, 558 (Pa. 1940) (applying *Ex parte Young*) ("While, of course, it is permissible for the State to prescribe such an interest charge in case of default after the proper interpretation of the act has been judicially established, harsh penalties or unusual interest rates cannot be imposed, pending litigation intended to test the construction or validity of an act, so as to deter or intimidate parties affected thereby from resorting to the courts for that purpose[.]"); *Getty Oil Co. v. Ruckelshaus*, 342 F. Supp. 1006, 1022 (D. Del. 1972) (noting the "several Supreme Court cases holding that an order triggering penalties so encumbering the judicial process as to render resort thereto infeasible is unconstitutional absent prior judicial review" and affirming the proposition that "penalties can, in certain circumstances, make pursuit of judicial remedies so burdensome as to deny due process").

Traditionally, the doctrine of *Ex parte Young* is implicated where, as here, a regulated entity is faced with the decision between (a) not complying with an order, challenging the statute, and paying huge penalties if it loses the challenge or (b) complying with the order and thereby foregoing the chance to challenge the order. The key proposition of law to be derived from *Ex parte Young* and its progeny is that a party has a due process right to contest the validity of a regulatory statute and an administrative enforcement order "without necessarily having to face ruinous penalties if the suit is lost." *Brown & Williamson Tobacco Corp. v. Engman*, 527 F.2d 1115, 1119 (2d Cir. 1975). This is because the "effect and result of such legislation [would] preclude resort to the courts . . . for the purpose of testing its validity." *Ex parte Young*, 209 U.S. at 146.

Here, as explained more fully below, SBI was not placed on fair notice that it could be subjected to an assessment of interest and a penalty based upon the conduct and correspondence of the Commission, the statutory sections of Act 13, or the *Proposed Rulemaking Order*. Indeed, SBI did not face the threat of being assessed interest and a penalty (in the significant amount of over $100,000.00), and apparently did not discover that I&E would deem it to be in violation of Act 13, until SBI received the complaint filed by I&E on January 17, 2014. At that point in time, SBI had already received the 2011 and 2012 Impact Fee Statements from the Commission and submitted complete payment for those years. In any case, SBI had to await the commencement of an enforcement action by I&E to challenge or dispute the impact fees that I&E asserted were owed. In its decision, the Commission concluded that the imposition of interest and a penalty under section 2308(a) and (b) of Act 13 were mandatory—as opposed to discretionary—and that there is no good faith exception or defense. (Commission's decision at 54-55.) *Cf. Wagner Seed Co.*

18

*v. Daggett*, 800 F.2d 310, 316 (2d Cir. 1986) ("[I]t is plain that there is no constitutional violation if the imposition of penalties is subject to [] discretion, and the enforcement provisions contain a good faith exception." (internal citations omitted)). The Commission further determined that SBI had a legitimate basis to challenge the impact fee assessments, fully cooperated with the Commission, and did not engage in any willful misconduct. (Commission's decision at 61-67.)[15, 16] *Cf.*

---

[15] Particularly, in the part of its decision dealing with the discretionary civil penalty that the ALJ found was warranted, the Commission analyzed various factors, overruled the ALJ in this regard, and ultimately determined that SBI did not engage in conduct sufficient to inflict a penalty that was designed by statute to have a deterrent effect. In so determining, the Commission made the following findings, conclusions, and/or observations:

> \* "We agree with SBI that there was no evidence of willful misconduct. Rather, SBI's actions evidence an attempt to resolve its conflicting interpretation of Act 13 coupled with a willingness to pay the undisputed impact and administrative fees. Furthermore, we acknowledge the direction in our *Rulemaking Order* suggesting that producers withhold payments until a dispute is resolved in order to avoid overpayment issues from arising." (Commission's decision at 61.)

> \* "SBI argues that the record evidence supported a finding that it fully cooperated with the Commission. As such, SBI asserts that this factor should be deemed as being non-applicable or mitigating against any penalty . . . . The evidence that SBI cooperated with the Commission supports a finding that this factor weighs against the imposition of a civil penalty." (Commission's decision at 65.)

> \* "Because this is a case of first impression and in light of [SBI's] good faith effort to cooperate with the Commission and pay undisputed amounts owed, we find that these factors support a finding that no civil penalty be imposed." (Commission's decision at 67.)

(Commission's decision at 61-67.)

[16] On this note, it is worthy to mention that, in reversing this Court, the Supreme Court in *Snyder II* concluded that the definition of "vertical well" was facially ambiguous and had at least

**(Footnote continued on next page…)**

*General Electric Co. v. Jackson*, 610 F.3d 110, 118-19 (D.C. Cir. 2010) (stating that statutes imposing penalties and fines may satisfy due process if such penalties or fines are subject to a "reasonable grounds" defense where the plaintiff had "sufficient cause" to challenge the statute (internal citation omitted)).

Moreover, when the Commission issued its June 11, 2015 decision, SBI had 20 days to pay the impact fees, interest, and a penalty. On July 30, 2015, the Commission denied SBI's "request that the Commission issue an order staying the requirement that SBI make the disputed Act 13 payments pending completion of appellate review," (Commission's Opinion and Order, 7/30/15, at 2), thereby rendering payment due and owing immediately. Assuming that this Court did not grant SBI's motion for an emergency stay, and our decision in *Snyder I* reversing the Commission was affirmed by the Supreme Court, SBI, for all intents and purposes, would still have been imperiled with the imposition of interest and a penalty. Even at this hypothetical point in time, SBI would have lacked any recourse under Act 13 through which it could recoup the money that it would have had to pay, including interest and a penalty, because Act 13 does not contain a refunding mechanism. *See Aminoil, Inc. v. United States Environmental Protection Agency*, 599 F. Supp. 69, 75 (C.D. Cal. 1984) (granting a preliminary injunction enjoining the imposition of

_____

**(continued…)**

two reasonable interpretations. As such, the Court was required to consider the various (or at least some of the) factors of statutory construction, including the debatable concept of administrative deference and the propriety of giving weight to statements made by members of the General Assembly during floor debate. *See Snyder II*, 198 A.3d at 1081-84 (Wecht, J., concurring, joined by Baer, J.); *cf.* Commission's decision at 62-63. *See also General Motors, LLC v. Bureau of Professional and Occupational Affairs (State Board of Vehicle Manufacturers, Dealers and Salesperson)*, 212 A.3d 40, 47-48 (Pa. 2019); *Harmon v. Unemployment Compensation Board of Review*, 207 A.3d 292, 308 (Pa. 2019) (Saylor, C.J., concurring); *id.* at 308-14 (Donohue, J., concurring and Wecht, J., concurring).

20

penalties, in notable part, because "no clear right exists for these alleged responsible parties to comply with the administrative order and then challenge its validity and seek reimbursement from the government"). The net result is that this scheme is constitutionally problematic in the sense that it effectively forecloses meaningful access to the courts, *see Ex parte Young*, 209 U.S. at 146, and with there being no practical incentive to file an appeal, Act 13 has a real and bona fide tendency to "chill[] an affected party's right to seek judicial review." *Louisiana Pacific Corp. v. Beazer Materials & Services, Inc.*, 842 F. Supp. 1243, 1252 (E.D. Cal. 1994).

In the unique context of this case, the provisions of Act 13, as applied by the administrative bodies and subdivisions of the PUC, had the practical effect of unlawfully threatening and assessing SBI with interest and a penalty for exercising its right to contest the amount of impact fees it owed. Therefore, in order to remedy this due process violation, as well as Act 13's lack of a sufficient post-deprivation remedy, we conclude that the Commission's imposition of interest and a penalty must be set aside as void.

**Procedural Due Process—Act 13 and the Conduct of the Commission Failed to Provide SBI with Adequate Notice**

SBI also argues that the Commission erred in assessing interest and a penalty because the Commission failed to recognize that it complied with the Commission's formal and informal orders and directives for submitting annual reports. SBI maintains that it followed the procedures for reporting wells, did not violate Act 13, and tendered payments to the Commission in timely fashion and in the amounts that the Commission requested. SBI further asserts it was "sanctioned for actually following the precise appeal procedures recommended" in the Commission's October 17, 2013 *Proposed Rulemaking Order*. (SBI's Br. at 12.) Essentially, SBI

21

contends that the Commission provided it with confusing and inadequate notice by misleading SBI into believing that it could withhold impact fee payments for disputed wells without risking an assessment of interest and a penalty.

It is beyond cavil that the Due Process Clause requires that parties receive fair notice before being deprived of property. *See Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). Generally, fair notice exists "if, by reviewing the regulations and other public statements issued by the agency, a regulated party acting in good faith would be able to identify, with 'ascertainable certainty,' the standards with which the agency expects parties to conform." *ExxonMobil Pipeline Co. v. United States Department of Transportation*, 867 F.3d 564, 578-79 (5th Cir. 2017). Further, based on concerns rooted in notions of fundamental fairness, the courts are also weary of cases where a party was affirmatively misled by an administrative agency into believing that a law or rule would apply or would not apply in a particular situation. This is so regardless of whether the misleading conduct was transmitted through an agency's interpretive rule, policy statement, or by representations made by an agency official. *See South Salt Lake City v. Terkelson*, 61 P.3d 282, 286 (Utah Ct. App. 2002) (collecting cases); *see also United States v. Pennsylvania Industrial Chemical Corp.*, 411 U.S. 655, 674 (1973); *State v. Guzman*, 968 P.2d 194, 207 (Haw. Ct. App. 1998) (collecting and synthesizing cases).

Broadly speaking, the requirement of clear and adequate notice is not satisfied where the administrative agency offers "baffling and inconsistent" advice, *Satellite Broadcasting Co., Inc. v. Federal Communications Commission*, 824 F.2d 1, 2 (D.C. Cir. 1987), and due process prohibits a person from being "penalized for acting in conformance with prior agency guidance." William Funk, *Administrative*

22

*Law Discussion Forum: Legislating For Nonlegislative Rules*, 56 ADMIN. L. REV. 1023, 1038 n.34 (2004); *cf. Reich v. Collins*, 513 U.S. 106, 108 (1994) (holding that due process was violated where Florida law provided a taxpayer with a "clear and certain" post-deprivation remedy, and then declared, only after the disputed taxes had been paid, that no such remedy exists). As one leading commentator in the field of administrative law has explained:

> The fact that neither interpretive rules nor general statements of policy can be binding on persons outside the agency does not mean that persons outside the agency cannot rely on such nonlegislative rules to a certain extent. For example, if a person complies with an agency's interpretation of the law or complies with the terms of a general statement of policy, the agency could not thereafter penalize the person for such compliance. Due process, if nothing else, would preclude the agency from penalizing someone for reliance on the agency's official position.

Funk, *supra* pp. 22-23, at 1038.[17]

As referenced above, but reproduced in more detail here, pursuant to section 2303(b) of Act 13, a well producer must submit to the Commission an annual report identifying the number of unconventional gas wells along with payment of

---

[17] *See also Upton v. Securities Exchange Commission*, 75 F.3d 92, 97-98 (2d Cir. 1996) ("[W]e cannot defer to the Commission's interpretation of its rules if doing so would penalize an individual who has not received fair notice . . . . Because there was substantial uncertainty in the Commission's interpretation of [its administrative regulation] Upton was not on reasonable notice . . . . The Commission may not sanction Upton pursuant to a substantial change in its enforcement policy that was not reasonably communicated to the public."); *General Electric Co. v. United States Environmental Protection Agency*, 53 F.3d 1324, 1333-34 (D.C. Cir. 1995) ("Where, as here, the regulations and other policy statements are unclear, where the petitioner's interpretation is reasonable, and where the agency itself struggles to provide a definitive reading of the regulatory requirements, a regulated party is not 'on notice' of the agency's ultimate interpretation of the regulations, and may not be punished.").

impact fees. 58 Pa.C.S. §2303(b).[18] Section 2303(a) states that "the fee imposed under this chapter shall be due by April 1, 2013, and each April 1 thereafter" and "[t]he fee shall become **delinquent** if not remitted to the [C]ommission on the reporting date." 58 Pa.C.S. §2303(a) (emphasis added); *see also* Section 2307(e) of Act 13, 58 Pa.C.S. §2307(e) ("If no report is filed or a producer files a false or fraudulent report with the intent to evade the fee, an assessment of the amount owed may be made at any time."). Moreover, section 2307(b) of Act 13 provides that when a producer files an annual report, and "the [C]ommission determines that the [impact] fee has not been paid in full, it may **issue a notice of the amount due** [, *i.e.*, the Notice of Amount Due mentioned in the factual recitation of this case] **and demand for payment** and shall set forth the basis for the determination." 58 Pa.C.S. §2307(b) (emphasis added); *see also* section 2307(c) of Act 13, 58 Pa.C.S. §2307(c) ("Notice of failure to pay the correct fee shall be sent to the producer via certified mail."). Adding to the mix, section 2308(a) of Act 13 declares that the Commission "shall" impose "interest on any **delinquent fee**," while section 2308(b) provides that "if a producer fails to make **timely payment** of the fee," the Commission "shall" impose "a penalty of 5% of the amount of the fee," for each month in which the fee is not paid, up to and including a maximum penalty of "25% in the aggregate." 58 Pa.C.S. §2308(a), (b) (emphasis added). Finally, section 2308(c) provides, in relevant part, that "[i]f the [C]ommission determines that a producer has not made a **timely payment of the fee**, the [C]ommission shall **send written notice of the amount of**

_____

[18] "By September 1, 2012, and April 1 of each year thereafter, each producer shall submit payment of the fee to the [C]ommission and a report on a form prescribed by the [C]ommission for the previous calendar year. The report shall include the following: (1) The number of spud unconventional gas wells of a producer in each municipality within each county that has imposed a fee under this chapter[;] [and] (2) The date that each unconventional gas well identified under paragraph (1) was spud or ceased the production of natural gas." 58 Pa.C.S. §2303(b).

**the deficiency** to the producer within 30 days from the date of determining the deficiency." 58 Pa.C.S. §2308(c) (emphasis added).[19]

Based on a plain reading of these statutory provisions, we conclude that they are ambiguous and vague in many fundamental respects. Initially, it is entirely unclear as to whether the time for calculating the occurrence of the "delinquency" referenced in section 2303(a) pertains to (1) the number of wells a producer reports, should have been reported, or a monetary figure erroneously calculated by the

---

[19] Section 2308(a) through (c) read as follows:

> (a) Assessment.—
>
> The [C]ommission shall assess interest on any delinquent fee . . . .
>
> (b) Penalty.—
> In addition to the assessed interest under subsection (a), if a producer fails to make timely payment of the fee, there shall be added to the amount of the fee due a penalty of 5% of the amount of the fee if failure to file a timely payment is for not more than one month, with an additional 5% penalty for each additional month, or fraction of a month, during which the failure continues, not to exceed 25% in the aggregate.
>
> (c) Timely payment.—
>
> If the [C]ommission determines that a producer has not made a timely payment of the fee, the [C]ommission shall send written notice of the amount of the deficiency to the producer within 30 days from the date of determining the deficiency. The [C]ommission shall notify the department of a producer that has failed to pay the fee for any unconventional gas well under section 2302 (relating to unconventional gas well fee). If the producer does not have a pending appeal related to payment of the fee in process, the department shall suspend the permit for that well until the fee has been paid.

58 Pa.C.S. §2308(a)-(c).

25

producer when submitting the annual report; (2) an amount listed as due and owing by the Commission in a subsequent "Notice of Amount Due"; or (3) an amount that the Commission later determines, through an official adjudication, and following a producer's bona fide dispute, that the producer owes under Act 13.[20] Compounding matters, and contributing to this overall yet prevalent sense of uncertainty regarding the statutory scheme and its implementation by the Commission, is the fact that a financial "delinquency" typically involves a "debt that is overdue in payment." Black's Law Dictionary 493 (9th ed. 2009). By its very nature, a "delinquency" and/or an "untimely payment" presupposes that the amount of the payment due must first be established and demanded prior to it being deemed "delinquent." Reading section 2307(e) *in pari materia* with section 2303(a), it is conceivable (perhaps, more than likely) that Act 13 envisions that sometime after a producer files an annual report, the Commission will provide some sort of notice to a producer of the amount that it has determined is further owed before finding that the producer is delinquent or failed to tender a timely payment.

---

[20] For instance, given the language of section 2307(e) of Act 13, it is quite possible that this provision could be construed to mean that a producer has to pay, on the applicable reporting date, only that which is due according to what the producer listed in its annual report. *See* 58 Pa.C.S. §2303(a). This interpretation is plausible especially in the situation where the producer submits an accurate and complete annual report identifying the wells and their production level, *see* 58 Pa.C.S. §2303(b), because if the "producer files a false or fraudulent [annual report] with the intent to evade the fee," the Commission can, at any time, render an "assessment of the amount owed." 58 Pa.C.S. §2307(e). Additionally, it is not evident, by any measure, whether a producer's payments are deemed to be "delinquent" or "untimely," where, as here, the Commission issues "Impact Fees Statements"—which apparently are an informal attempt by the Commission to resolve the matter prior to issuing a Notice of Amount Due under section 2307(b) and thereafter instituting formal proceedings if a producer does not pay that amount. It is also a matter of speculation as to whether the Commission considers a delinquency to have transpired the moment the Impact Fee Statement is received by the producer, if the producer does pay the amount listed in the Impact Fee Statement within a certain timeframe, or during some later instance or event.

All of the opacity within and surrounding the above procedure for determining when a delinquency or untimely payment has occurred for purposes of assessing interest and a penalty is further complicated by the Commission's conduct and subsequent reiterations in its *Proposed Rulemaking Order*.[21] Here, as found by

---

[21] For the sake of completeness, we reproduce the relevant portion of the *Proposed Rulemaking Order*, which states as follows:

> **Collection of Impact Fee.**
>
> Act 13 requires all producers to file annual producer reports with the Commission detailing the number of its spud unconventional gas wells subject to the impact fee for the previous calendar year. 58 Pa.C.S. §2303(b). As such, producers self-report their impact fee liability under Act 13. *Id.* These annual producer reports were due by September 1, 2012 (for the 2011 reporting year), and are due by April 1 for each year thereafter. *Id.* Along with this report, a producer is required to submit payment of the impact fee to the Commission. *Id.* The impact fee due from a producer is calculated based on the number of qualifying wells that the producer lists on its annual producer reports. *Id.*
>
> Any disputes regarding a producer's unconventional gas wells that are subject to the impact fee should be identified on the annual producer reports. **If a producer is disputing whether a particular well is subject to the impact fee, the producer should not pay the corresponding impact fee for the disputed well unless and until the dispute has been resolved**. To the extent that there is a dispute regarding the accuracy of a producer's report, the Commission will address that dispute via the mechanisms established at Sections 2307-2313 of the Act. *See* 58 Pa.C.S. §§2307-2313. These provisions will be enforced consistent with the Commission's general rules of practice and procedure . . . .
>
> We note that we will utilize formal proceedings only after informal efforts reveal that a dispute cannot be resolved. The Commission will always seek informal resolution for impact fee disputes prior to initiating formal enforcement proceedings pursuant to Sections 2307-2313 of the Act.

**(Footnote continued on next page…)**

(continued…)

If the Commission is required to initiate formal enforcement proceedings pursuant to Sections 2307-2313 of [] Act [13] against a producer for untimely or delinquent impact fee payments, **the Commission** will refer the matter to its Bureau of Administration's Fiscal Office (Fiscal Office) and [I&E]. The Fiscal Office **may initiate an enforcement proceeding by issuing a Notice of Amount Due** pursuant to Section 2307(b) of the Act. 58 Pa. C.S. §2307(b). This Notice of Amount Due will include a demand for payment of a particular producer's untimely or delinquent impact fee, notice of the amount of impact fee due and the basis for the determination. *Id.*

**If a producer does not pay the untimely or delinquent impact fee as required by the Notice of Amount Due, the producer shall file a written response with the Commission regarding the matter within twenty (20) days of the date of service of the Notice of Amount Due**. If, however, the producer fails to pay the untimely or delinquent impact fee as required by the Notice of Amount Due and does not file a written response with the Commission, the producer may be deemed to be in default. **On the other hand, if the producer fails to pay the untimely or delinquent impact fee in full as required by the Notice of Amount Due, but files a written response with the Commission in compliance with the procedures discussed above, the Fiscal Office will refer the matter to [an ALJ]** for hearing and issuance of a Recommended Decision pursuant to the Commission's rules of practice and procedure found at 52 Pa. Code Chapters 1, 3 and 5. **Following the adjudicatory proceeding before the [ALJ], the Commission will issue a Final Order regarding the matter**.

Based on the foregoing, **the Commission may assess interest and penalties** on untimely or delinquent impact fee payments as permitted by Sections 2307-2313 of the Act **if** (1) the producer fails to pay the delinquent impact fee in full in compliance with the Notice of Amount Due, (2) the producer fails to file a timely response with the Commission if no payment is made, or (3) **after hearing, the Commission sustains the amount due by a final order**. 58 Pa.C.S. §§2307-2313.

**(Footnote continued on next page…)**

the Commission, SBI submitted accurate annual reports for the 2011 and 2012 reporting periods, and paid in full the amount that the Commission determined was owed when it sent SBI the 2011 and 2012 Impact Fee Statements. (Commission's decision at 6-8.) Importantly, **after** the Bureau of Administration informed SBI in an email sent in April 2013 that there was an issue regarding whether the wells in the 2011 and 2012 annual reports were vertical or stripper wells, SBI "advised the Commission that it disagreed with the Commission's interpretation" regarding the wells' monthly production and their corresponding classifications. (Commission's decision at 7.) Thereafter, apparently accepting the position of SBI as possessing arguable merit and presenting a legitimate "dispute," the Commission, in the 2012 Impact Statement, "subtracted the impact fees for [21] disputed vertical gas wells," (Commission's decision at 8 n.8), for which the Bureau of Administration had informed SBI should be included as wells subjected to impact fees.

Subsequently, and most significantly, on October 17, 2013, the Commission issued its *Proposed Rulemaking Order*, which, among other things, stated: "If a producer is disputing whether a particular well is subject to the impact fee, **the producer should not pay the corresponding impact fee for the disputed well unless and until the dispute has been resolved**." *Id.* at 16 (emphasis added). With respect to impact fees, the Commission represented in the *Proposed Rulemaking Order* that "[t]he impact fee due from a producer is calculated based on the number of qualifying wells that the producer lists on its annual [] reports" and informed producers that "[a]ny disputes regarding a producer's unconventional gas wells that

---

**(continued…)**

*Proposed Rulemaking Order*, at 16-18 (footnotes and some internal citations omitted).

are subject to the impact fee should be identified on the annual [] reports." *Id.* at 16. Although it does not appear that SBI made notations marking its dispute on the annual reports, the Commission issued the *Proposed Rulemaking Order* after SBI submitted its annual reports for the 2011 and 2012 years. Nonetheless, as mentioned above, the Commission accepted SBI's response to I&E's email as apparently lodging a valid "dispute" for purposes of the *Proposed Rulemaking Order* by subtracting the disputed wells from the 2012 Impact Statement. Undoubtedly, this conduct by the Commission, which, in substance, was reaffirmed in the *Proposed Rulemaking Order*, sent a clear signal to SBI that it did not have to pay impact fees for any of the wells that SBI considered to be "stripper wells," or at least until a dispute arises and the Commission later determines that the wells are "vertical wells" subject to impact fees.

Moreover, although the General Assembly couched the issuance of a Notice of Amount Due in permissive statutory language ("may issue"), 58 Pa.C.S. §2307(b), the *Proposed Rulemaking Order* gives a producer reason to believe that the Commission will construe that statute in a mandatory fashion, follow the procedure recommended therein, and provide a producer with a Notice of Amount Due. *See Proposed Rulemaking Order*, at 17-18. For instance, the *Proposed Rulemaking Order* states that "if the producer fails to pay the untimely or delinquent impact fee in full as required by the Notice of Amount Due, but files a written response with the Commission" contesting the amount, the matter will be referred to an ALJ "for hearing and issuance of a [r]ecommended [d]ecision" and "the Commission will issue a [f]inal [o]rder regarding the matter." *Id.* at 18. It is in this specific circumstance that the *Proposed Rulemaking Order* goes on to advise producers that "the Commission may assess interest and penalties on untimely or delinquent impact fee

payments," among other situations, when "after hearing, the Commission sustains the amount due by a final order." *Id.* at 18.[22]

Following the Commission's issuance of the *Proposed Rulemaking Order*, on January 17, 2014, I&E proceeded through the formal adjudicatory process. The apparent "dispute" between SBI and the Commission was not resolved at the administrative level until the Commission issued its June 11, 2015 decision and ordered SBI to tender full payment within 20 days. *See Snyder II*, 198 A.3d at 1063; Commission's decision at 69-70. Wrapped in this procedural quandary, the question is whether, as a matter of law, SBI was delinquent or failed to submit timely payment sometime prior to the formal proceedings before the ALJ and/or Commission, at the precise moment in which the Commission filed its decision upholding the ALJ, or, given the ostensible "dispute" over the impact fees, if, and only if, SBI failed to pay the amount owed within 20 days of the Commission's final decision. According to our reading of the decision, it seems, to a degree of reasonable certainty, the Commission concluded that the date on which SBI was "delinquent" was the date SBI filed its annual reports. *See* Commission's decision at 18-19, 21, 57; *see also* 58 Pa.C.S. §2303(a)-(b). With respect to SBI's argument that it followed the procedure in the *Proposed Rulemaking Order* and should not have been ordered to pay interest and a penalty until its dispute had been resolved in the Commission's decision, the Commission chose not to directly address this issue in the portion of its decision

_____

[22] Once again, these nuances highlight the perplexing issues of "untimeliness" and "delinquency" and, further, give rise to questions surrounding what type of notice, if any, should be provided to a producer before the Commission makes such determinations. When viewed through a broader lens, these issues are further confounded by the Commission's repeated admonishment in the *Proposed Rulemaking Order* that "[i]f a producer is disputing whether a particular well is subject to the impact fee, the producer should not pay the corresponding impact fee for the disputed well unless and until the dispute has been resolved." *Id.* at 16 & 18 n.27.

31

disposing of SBI's exceptions regarding the mandatory imposition of interest and a penalty. *See* Commission's decision at 56-57. Instead, in the part of its decision overruling the ALJ's imposition of a discretionary civil penalty, and finding that SBI acted in good faith and cooperated fully with its directives, the Commission simply "acknowledge[d] the direction in [its] *Rulemaking Order* suggesting that producers withhold payments until a dispute is resolved in order to avoid overpayment issues from arising." (Commission's decision at 61.)

Given the ambiguous statutory framework of Act 13 regarding the exact moment in which a delinquency or untimely payment occurs, SBI was not placed on reasonable notice that it would be assessed interest and a penalty for mounting a challenge to the impact fees. Although the *Proposed Rulemaking Order* does not carry the force of law, and is instead a policy statement, it was nonetheless disseminated to the public and available to regulated entities such as SBI. As explained previously, SBI was justified in relying upon the *Proposed Rulemaking Order* to resolve the lack of clarity in Act 13 and to try to ascertain what the Commission would expect of it. *See* Funk, *supra* at 1038. Here, the Commission engaged in conduct and representations that led SBI to believe that it could dispute the impact fees, most particularly by subtracting the contested wells from the 2012 Impact Fee Statements, and later by issuing advice and information in the *Proposed Rulemaking Order*. However, the Commission rendered a decision that was patently at odds with, and directly contradicted its conduct and representations, when it determined that the date of delinquency or untimely payment occurred on the date that SBI submitted its annual reports. *Cf. Upton v. Securities Exchange Commission*, 75 F.3d 92, 97-98 (2d Cir. 1996) ("Because there was substantial uncertainty in the Commission's interpretation of [its administrative regulation] Upton was not on

32

reasonable notice . . . . The Commission may not sanction Upton pursuant to a substantial change in its enforcement policy that was not reasonably communicated to the public."); *General Electric Co. v. United States Environmental Protection Agency*, 53 F.3d 1324, 1333-34 (D.C. Cir. 1995) ("Where, as here, the regulations and other policy statements are unclear . . . and where the agency itself struggles to provide a definitive reading of the regulatory requirements, a regulated party is not 'on notice' of the agency's ultimate interpretation of the regulations, and may not be punished."). On this basis, the Commission apparently deemed it necessary to impose interest and a penalty on SBI, concluding that such interest and penalty were mandatory under Act 13.

Put simply, the Commission provided SBI with "baffling and inconsistent" advice, *Satellite Broadcasting*, 824 F.2d at 2, and made affirmative representations. In essence, the Commission punished SBI when it acted in conformity—or at least substantially complied—with the advice and guidance that it provided to the public and entities regulated under Act 13. If anything, the principles of due process prohibit the Commission from assessing SBI with interest and a penalty for relying on the Commission's conduct, representations, and the *Proposed Rulemaking Order*. *See* Funk, *supra* pp. 22-23, at 1038. Moreover, based on the ambiguities in Act 13, SBI, under a reasonable person standard, could not identify with ascertainable certainty, whether or not, or in what circumstances, it could challenge the impact fee statements without facing the threat of interest and a penalty.

By all means, it was absolutely vital that SBI be afforded with clear notice as to when the Commission's consider it to be "delinquent," "untimely," or otherwise in violation of Act 13, because this event marks the starting point for aggregating penalties on a monthly basis and for compounding interest. No such

notice was provided to SBI in this case, either through the provisions of Act 13 or the *Proposed Rulemaking Order*.

For these reasons, we conclude, in the alternative, that SBI did not receive fair and adequate notice of the process and procedure through which the Commission could find it in violation of Act 13 and impose interest and a penalty for that violation in contravention to the principles of due process.

Accordingly, we reverse the Commission's assessment of interest and a penalty on this basis as well.

**Conclusion**

For the above-stated reasons, and following our Supreme Court's remand in *Snyder II*, we reverse the remaining portion of the Commission's decision and order imposing interest and a penalty upon SBI.

_____
PATRICIA A. McCULLOUGH, Judge

Judge Crompton did not participate in the decision of this opinion.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Snyder Brothers, Inc.,               :
             Petitioner        :
                            :   No.  1043 C.D. 2015
             v.                 :
                            :
Pennsylvania Public Utility     :
Commission,               :
             Respondent    :

## *__ORDER__*

AND NOW, this 6th day of February, 2020, the June 11, 2015 order of the Pennsylvania Public Utility Commission (Commission), on remand to this Court from our Supreme Court in *Snyder Brothers, Inc. v. Pennsylvania Public Utility Commission*, 198 A.3d 1056 (Pa. 2018), is hereby REVERSED to the extent that the Commission assessed interest and a penalty on Snyder Brothers, Inc.

 

_____
PATRICIA A. McCULLOUGH, Judge